PER CURIAM.
Pursuant to article V, section 9 of the Florida Constitution, and in accordance with the criteria, additional factors, and procedures set forth in Florida Rule of Judicial Administration 2.035, we hereby certify the need for thirty-three additional judgeships during fiscal year 1984-85, as follows:
District Court Circuit Court County Court
Second Appellate District 03
Third Appellate District H
Fourth Appellate District 03
Fifth Appellate District t — I
1 Second Judicial Circuit
1 Fourth Judicial Circuit
1 Fifth Judicial Circuit
1 2 (Pinellas, Pasco) Sixth Judicial Circuit
1 Eighth Judicial Circuit
1 1 (Orange) Ninth Judicial Circuit
1 Tenth Judicial Circuit
3 (Dade) Eleventh Judicial Circuit
(Sarasota) Twelfth Judicial Circuit
1 (Hillsborough) Thirteenth Judicial Circuit
1 (Palm Beach) Fifteenth Judicial Circuit
(Broward) Seventeenth Judicial Circuit
(Seminole) Eighteenth Judicial Circuit
(Indian River) Nineteenth Judicial Circuit
Twentieth Judicial Circuit
14 13 TOTALS
On February 17, 1983 we certified the need for a total of twenty-seven new judge-ships during the 1983-85 biennium. The Legislature, however, did not fund any additional judgeships during the 1983 legislative session. We have now received a total of thirty-nine requests for new judgeships from the various Chief Judges, representing a renewed request of the twenty-seven previously certified, but unfunded, judge-ships and additional requests for twelve judgeships.
FINDINGS
DISTRICT COURTS OF APPEAL
In 1979 the Appellate Structure Commission recommended a standard of no more than 250 primary assignment cases for each appellate judge. In reality, each judge’s case load would be three times the number of primary assigned cases because district courts sit in panels of three and each judge has two secondary case assignments for each primary assignment. All of the district courts presently exceed this standard. In order to ensure the integrity *80 of the appellate process, this excessive case load should be reduced, as soon as practical, to the standard recommended by the Appellate Structure Commission. Case load comparisons for the intermediate appellate courts of the ten most populous states indicate that Florida’s district courts of appeal in 1982 had the second highest total filings, the third highest ratio of filings per judge, and the greatest number of published opinions.
First Appellate District. The First District, which currently has twelve judges, has not requested any additional judges this year. To achieve the 250 primary case assignment standard in 1984, the First District would need additional judges. It would not have been unreasonable for the First District to request that we certify its need for these additional judges. The First District, however, has expressed administrative concerns about expanding beyond its current membership. Additionally, between 1981 and 1983 there has been a decrease in the number of filings in the First District. It is for these reasons that we have not been requested to certify the need for the additional judges which would be required for the First District to achieve the 250 primary case assignment standard in 1984.
Second Appellate District. The Second District currently has ten judges, and the need for two additional judges in 1984 is certified. This certification confirms our previous finding for the biennium which was made in 1983.
Although filings in 1983 have been reduced due to vacancies existing on the circuit bench within the jurisdiction of the Second District, projections for 1984 indicate the Second District will have the third highest total case load and will continue to have the highest total population of all the five appellate districts. In order to move towards achieving the 250 case assignment standard in 1984, two additional judges are certified.
Third Appellate District. The Third District currently has nine judges, and the need for one additional judge is certified.
The Third District has the highest ratio of filings and dispositions per judge, and there has been more than a 15 percent increase in total filings between 1982 and 1983. In order to achieve the 250 primary case assignment standard in 1984, a total of almost four additional judges would be required, rather than just the one requested and presently certified. The Third District has not requested the additional judges because of space limitations. When additional space is provided, the already existing needs of the Third District will justify the certification of additional judges in order to reduce its filings per judge, presently the highest in the state, to a more acceptable standard.
Fourth Appellate District. The Fourth District has nine judges, and the need for two additional judges is certified. This certification confirms our previous certification of one additional judge over the biennium and adds a second judgeship based upon current and projected ease loads.
The Fourth District continues to have the largest number of pending cases. Filings have exceeded dispositions in 1982 and 1983. The area within the jurisdiction of the Fourth District represents a very rapidly growing part of the state and receives a large number of tourists each year. In order to fully achieve the 250 primary case assignment standard in 1984, three additional judges would be required in the Fourth District. At this time, however, we certify only the two additional judges requested.
Fifth Appellate District. The Fifth District has had six judges since its creation in 1979, and the need for one additional judge is certified. This is a recertification of the need which existed last year and continues to exist.
The Fifth District continues to have the highest ratio of population per judge of any district and a high attorney per judge ratio. Filings have increased every year since the Fifth District’s creation and are projected to continue to increase. In order to fully achieve the 250 primary case assignment *81 standard in 1984, two additional judgeships would be required, but we certify only the one requested at this time.
CIRCUIT AND COUNTY COURTS
Case filing statistics are only one of the factors we consider in determining the need for additional judges. At the trial court level, case filing statistics are not as significant in relation to other criteria and factors as they are at the appellate level. At the trial level, geographic size, the presence of nonlawyer county judges, the location of state institutions, the availability of retired judges and masters, and locally funded information systems vary widely and can affect the need for additional judges. Thus, while a standard of not more than 250 primary case assignments has been developed for the district courts, no similar standard can be applied at the trial court level. A case load standard at the trial level which ignores variations among the circuits would not be a correct measure of need for additional judges.
Case load information available at the state level for the trial courts is derived through the Summary Reporting System (SRS), which was implemented in 1978. SRS requires the commitment of virtually no state resources. The clerks of the circuit courts provide monthly tabulations of summary case filing and disposition statistics to the State Courts Administrator’s Office. Review of twenty-six counties in 1988 by that office demonstrates substantial compliance by the clerks with guidelines adopted for the collection and submission of this information. More specific case management information, collected in a uniform manner, may be useful at the state level, but this may also require the commitment of additional resources for the development and implementation of such a system. We are, therefore, requesting that the circuit court chief judges, as well as interested organizations and associations, work with the State Courts Administrator’s Office in developing recommendations for improvements in judicial work load information available at the state level which will more accurately and completely measure judicial work load on a uniform statewide basis within the practical constraints of the resources available. These recommendations should be presented to this Court by October 1, 1984.
The primary considerations prompting our certification of need for the respective judicial circuits are as follows:
Second Judicial Circuit (Franklin, Gadsden, Jefferson, Leon, Liberty, and Wakulla Counties). There are currently eight circuit and eight county court judges in the Second Circuit. The need for one additional circuit judgeship was certified last year. We recertify that need.
This is one of only two circuits which has not received an additional judgeship since article Y was adopted in 1972. As noted last year, the circuit has a high number of complex and constitutional eases involving state agencies because the state capital is located in this circuit. The circuit continues to have the highest ratio of attorneys per judge, is very large geographically, and has two nonlawyer county judges who cannot assist with circuit court duties. There is a high ratio of jury trials per judge in the circuit. There has been a significant increase in the circuit’s criminal case load in its larger counties, significant delays are now present in civil dockets, and retired judges are generally not available to assist with this circuit’s case load.
Fourth Judicial Circuit (Clay, Duval, and Nassau Counties). There are currently twenty-four circuit and fourteen county court judges in the Fourth Circuit. The need for one additional circuit judgeship was certified last year. We recertify that need.
The Fourth Circuit has not received a new judgeship since 1980 and has received only three additional circuit judgeships since the adoption of article V in 1972. Four county court judges are nonlawyers and, therefore, cannot assist with circuit work load. There is a very high ratio of filings per judge in the criminal division, and the circuit is projected to have the fourth highest number of jury trials with *82 over a 30 percent increase occurring between 1982 and 1983. The circuit also has a high attorney per judge ratio.
Fifth Judicial Circuit (Citrus, Hernan-do, Lake, Marion, and Sumter Counties). The Fifth Circuit currently has ten circuit and seven county court judges. The need for one additional circuit judgeship was certified last year. We recertify that need.
The Fifth Circuit is projected to rank first in the ratio of dispositions and population per judge and second in the ratio of filings per judge. It is also projected to rank fourth in the combined factors, including attorneys and trials per judge. Four of its seven county court judges cannot assist on the circuit bench, and no retired judges reside in the Fifth Circuit. Additionally, the circuit covers a geographic area of 4.160 square miles and has five state correctional institutions located within its jurisdiction. It is projected to experience a very large growth in population through 1985.
Sixth Judicial Circuit (Pasco and Pinel-las Counties). The Sixth Circuit currently has twenty-eight circuit and thirteen county court judges, two of whom are in Pasco County. The need for one additional county court judge for Pasco County was certified last year and we recertify that need. In addition, we certify the need for one circuit judge and one county court judge for Pinellas County.
While case load statistics alone would not indicate the need for an additional judge in Pasco County, as we stated last year, the Court is aware of significant geographic factors which must be considered in Pasco County. One of the two county court judges currently resides in the eastern part of the county and sits in the county courthouse in Dade City. The other county court judge resides in the western portion and sits at the branch courthouse in New Port Richey. There is a substantially heavier case load in the western portion. Because of the geography of the county and the distance between the courthouse and the branch courthouse, the judge in Dade City cannot effectively assist the judge in New Port Richey who is in critical need of assistance. Because the greater future development is expected to occur in west Pas-co, the already serious condition will be aggravated. Not only has the local bar been outspoken as to the critical need for an additional county court judge to assist in west Pasco, but also local law enforcement has expressed a concern about increases in serious traffic and county court cases which will further increase delay in case processing and result in a backlog of pending cases. Pasco County is projected to rank first in population per judge, and is also projected to rank eleventh in the state on the combined factors of filings, dispositions, trials, attorneys and population per judge. Pasco County is projected to have the fourth highest ratio of trials per judge in the state.
Pinellas County is projected to rank third in the state on the combined factors of filings, dispositions, trials, attorneys, and population per judge. The last new county court judgeship was created in Pinellas County in 1979 and that was the only new county judgeship created in the circuit since 1976. Among urban counties, Pinel-las is projected to rank second in jury trials per judge.
The bases of our certification of an additional circuit judge are the high ratio of population per judge, the great increase in projected population growth, the large number of attorneys in the circuit, and the geographic considerations relating to travel time within the circuit in view of the five primary and two satellite courthouses. Travel distances and traffic conditions between courthouse locations are factors which make it difficult to transfer judges among locations. Additionally, there has been a 14 percent increase in Circuit Court jury trials between 1982 and 1983 compared to the statewide average increase of 3 percent. As noted above, Pinellas County has a very high ratio of jury trials per county court judge, and, therefore, county court judges are not readily available to assist with circuit court jury trials. We note that the circuit does not appear to *83 rank particularly high in its ratio of filings per judge but this may be due to reporting errors which administrative staff, recently available to the circuit, is expected to correct.
Eighth Judicial Circuit (Alachua, Baker, Bradford, Gilchrist, Levy, and Union Counties). The Eighth Circuit currently has eight circuit and nine county court judges. The need for one additional circuit judgeship was certified last year. We re-certify that need.
The circuit has experienced a large percentage increase in filings since 1981, and filings continue to significantly exceed dispositions. Eight state correctional institutions are located in the circuit, and geographically the circuit is one hundred miles long and fifty miles wide. One county court judge is a nonlawyer. County court judges who are eligible to assist with circuit case load are used regularly for this purpose.
Ninth Judicial Circuit (Orange and Osceola Counties). The Ninth Circuit currently has eighteen circuit and twelve county court judges. The need for one additional circuit judgeship was certified last year. We recertify that need. In addition, we certify the need for a county court judge in Orange County.
The circuit is projected to rank third in ratio of attorneys per judge and has a high overall projected ranking of the combined factors of filings, dispositions, trials, attorneys, and population per judge. There has been a significant growth in population since 1975, and that trend is expected to continue. The circuit also has a large transient and tourist population. Orange County is projected to be ninth in combined county court rankings of filings, dispositions, trials, attorneys, and population per judge and has not had a new county court judge since 1978 despite significant population and tourist increases. Orange County also is projected to have the third highest ratio of trials per judge among urban counties.
Tenth Judicial Circuit (Hardee, Highlands, and Polk Counties). The Tenth Circuit currently has thirteen circuit and eight county court judges. The need for one additional circuit judgeship was certified last year. We recertify that need.
Since the circuit is large geographically, intra-circuit travel is very time-consuming. Population growth in the circuit has been high and is expected to continue. The circuit ranks high in its ratio of population per judge. Two of the eight county court judges are not eligible to assist with circuit court case load, and the circuit has made extensive use of retired judges.
Eleventh Judicial Circuit (Dade County). The Eleventh Circuit currently has fifty-seven circuit and thirty-two county court judges. The need for two additional circuit as well as three additional county court judgeships was certified last year. We revise that previous certification and certify the need for three circuit and two county court judgeships.
The circuit is projected to rank second in the state in ratio of attorneys per judge. In addition, as we noted last year, the circuit has experienced a significant population increase as well as an influx of migrants. The circuit continues to have a high tourist and transient population. In combined overall ratios, this circuit is projected to rank third. Dade County has evidenced a strong commitment to deal effectively with the area’s high crime rate. Since 1980, there has been a 33 percent increase in police officers, and a 48 percent increase in arrests. This has resulted in a significant increase in criminal filings, both at the circuit and county court level. County court judges have been assisting on the circuit bench, with two county court judges assisting almost full-time in the circuit criminal division. With high county court case loads, they must now attend to their own dockets which have experienced a dramatic increase in traffic and criminal cases. The certification of three circuit judges should allow at least one county court judge to return to the county bench from his circuit court assignment, thus alleviating the need for one of the county court judges certified last year.
*84 Twelfth Judicial Circuit (DeSoto, Manatee, and Sarasota Counties). The Twelfth Circuit currently has eleven circuit and six county court judges, with three county court judges in Sarasota County. The need for an additional county court judgeship was certified for Sarasota County last year. We recertify that need.
This Court previously certified the need for an additional county court judge in Sarasota County in 1981, 1982, and in 1983. Although the Legislature approved additional circuit judgeships in 1981 and 1982, no county court judgeship has been approved in Sarasota County since 1976. The county court case loads have continued to grow and presently rank near the top in ratio of filings per judge. Sarasota County is projected to rank first in combined overall ratios. Circuit court judges cannot assist in county court due to the ever-increasing circuit court case load. The Twelfth Circuit is projected to rank seventh in ratio of filings per circuit judge, fourth in ratio of population per circuit judge, and seventh in combined overall ratios.
Thirteenth Judicial Circuit (Hillsbor-ough County). The Thirteenth Circuit currently has twenty-five circuit and ten county court judges. The need for an additional circuit as well as an additional county court judgeship was certified last year. We re-certify that need.
The circuit has a high overall ranking in the combined factors of filings, dispositions, attorneys, and population per circuit judge. Hillsborough County ranks near the top in the state in its crime rate, and the county is also near the top in total county court filings. The circuit has received only one new circuit judge since 1979 and one county court judge since 1973. Although there is a current need for these additional judges, space limitations currently exist that would make it impractical to have them in place during 1984. New construction will resolve this problem by April 1985, and the new judges should be allowed to take office at that time.
Fifteenth Judicial Circuit (Palm Beach County). The Fifteenth Circuit currently has twenty-one circuit and ten county court judges. The need for two additional county court judgeships was certified last year. We recertify that need and additionally certify the need for one circuit judge.
The circuit has experienced a significant population increase and has a large tourist population. Projections for 1985 are for a 50 percent increase over 1975 population. The circuit is projected to rank fifth in the combined factors of filings, dispositions, trials, attorneys, and population per circuit judge. Significantly, it is projected to have the third highest ratio of trials per circuit judge. There is a need for additional county court resources since there has been only one new county court judge approved since 1979, and because the county is projected to rank first in county court filings per judge and second in combined overall ratios. Palm Beach County is also projected to rank first among urban counties in ratio of trials per county judge.
Seventeenth Judicial Circuit (Broward County). The Seventeenth Circuit currently has forty-one circuit and seventeen county court judges. The need for two additional county court judges was certified last year. We recertify that need. Bro-ward County is projected to rank fourth in overall combined ratios of filings, dispositions, attorneys, trials and population per county judge. Only two new county court judgeships have been created since 1979. Between 1980 and 1983 there has been a 20 percent increase in local law enforcement personnel among the eight largest law enforcement agencies in the county.
For the first time since 1975 and for only the second time since 1972, the circuit has not requested additional circuit court judgeships. We take particular note of the actions which have been taken by the Seventeenth Circuit in lieu of a request for new judgeships and in response to a report on pending case loads by the State Courts Administrator’s Office which we requested in last year’s certification opinion. These actions, which evidence a sincere commit *85 ment to the effective and efficient operation of the circuit, include:
1. Issuance of an administrative order requiring the use of a uniform motion calendar.
2. The use of Nova law students to help purge old ease files and to remove from the pending files cases which have been closed.
3. The issuance of an administrative order reducing jury panel sizes, which will result in a dramatic and significant savings to the state.
4. Implementation of a team concept for maximizing the use of available judicial manpower.
5. The active involvement of individual judges in purging their own card files of inactive cases.
6. Development of a plan to utilize volunteer lawyers to conduct mandatory settlement conferences on pending cases.
7. Development of a plan to increase the availability of courtroom facilities in satellite courts for the purpose of conducting trials.
Improved administration is commendable, and we consider it to be a priority for the state court system. It can, and has, obviated the need for additional circuit court judgeships in the Seventeenth Circuit this year. Dispute resolution, arbitration, settlement conferences, strict continuance policies, and judicial control of dockets are encouraged, and we expect each circuit to apply these and other case management techniques to reduce its need for additional judges. In a state like Florida, however, where there is ever-increasing population and tourist growth, a need to certify additional judges in future years in the Seventeenth Circuit and elsewhere will develop, notwithstanding optimum case management systems.
Eighteenth Judicial Circuit (Brevard and Seminole Counties). The Eighteenth Circuit currently has fourteen circuit and eight county court judges. The need for one additional county court judge for Seminole County was certified last year. We recertify that need.
As we previously pointed out, Seminole County has not had a new judgeship since 1976, and the circuit has received only one new circuit judge since 1972. Population growth has been substantial, with a high number of tourists passing through Seminole County on their way to the Disney World area. The county ranks near the top in ratio of filings per judge, and is projected to rank seventh in overall combined ratios.
Nineteenth Judicial Circuit (Indian River, Martin, Okeechobee, and St. Lucie Counties). The Nineteenth Circuit currently has eight circuit and six county court judgeships. The need for one additional circuit and one additional county court judgeship was certified last year. We re-certify that need.
The circuit is projected to be tied for first in overall combined ratios and has shown-a significant population increase which is expected to continue. The circuit also ranks high in ratio of trials per judge. Due to the size of the circuit, 2,423 square miles, travel time is considerable. One of the county court judges is a nonlawyer. Indian River County has one of the highest ratios of county court filings per judge in the state, has not had a new county court judgeship since article V was adopted, and is projected to rank fourth in overall combined ratios.
Twentieth Judicial Circuit (Charlotte, Collier, Glades, Hendry, and Lee Counties). The Twentieth Circuit currently has eleven circuit and nine county court judges. The need for one additional circuit judgeship was certified last year. We recertify that need.
The circuit ranks high in population per judge, has a high ratio of trials per judge, and is projected to be tied for first in overall combined ratios. Three of the county court judges are nonlawyers and cannot assist on the circuit bench. The circuit covers a large geographic area and has experienced an increasing number of complex criminal cases. The circuit is *86 projected to have a 68 percent population growth between 1975 and 1985.
CERTIFICATION
Accordingly, pursuant to article V, section 9, Florida Constitution, we certify the need for six additional district court of appeal judgeships, fourteen additional circuit court judgeships, and thirteen additional county court judgeships for fiscal year 1984-85. These judicial officers are necessary for the proper administration of justice, and we recommend they be made permanent and funded by the state. These new judgeships should become effective August 1, 1984, with the exception of the additional circuit and county court judge-ships certified for the Thirteenth Judicial Circuit (Hillsborough County) which should become effective April 1, 1985, due to presently existing space limitations.
ALDERMAN, C.J., and BOYD, OVER-TON, McDonald, EHRLICH and SHAW, JJ., concur.